We will call our next case, which is In Re RGN Group Holdings, LLC. I think we ought to mess with what the board does in this issue. I think we ought to mess with what the board does in this issue. Okay, we're ready to proceed. Thank you, Your Honor, and may it please the court, my name is John Bash, and I represent the appellants in this case, and with leave of the court, I'd like to reserve three minutes for rebuttal. Can I just, on a factual matter, are there any new developments in the Texas State Court case since the letters were sent to us on October 13? No, Your Honor, the bench trial aspect of that case remains under advisement by the court, and so final judgment has not been entered. No idea. Yeah, no, nothing has changed at all from the briefing then. No, Your Honor. Thank you. Was the jury verdict inconsistent with the bench trial? I note that there was inconsistency noted. Was the jury verdict involved in that inconsistency? Judge Roth, do you mean the bench trial in this case that's up on appeal before you, or do you mean the... My understanding is that has not been resolved yet. That's what we're waiting for, is for the court to resolve the bench aspect of the case. So the jury found that R.G. and Dallas did not breach the agreement, but the TIAA did. The bench aspect of the case is between the guarantor and TIAA. The reason that's a bench aspect is because there was a jury waiver clause in the guarantee agreement. So that's... There was, Mr. Bass, the other side here has made a point of arguing that the jury verdict was inconsistent because at one and the same time, they said the Ninth Amendment was in effect, but that you were on a month-to-month, and that those two things can't be true at the same time. So there's fundamentally a problem with the jury verdict. Can you speak to that? I don't want to speak for Judge Roth, but I was interested to hear your take on that argument from the other side. They do argue that, and that is incorrect, Your Honor. Of course, I don't represent R.G. and Dallas, so I'm just speaking based on knowledge of what was argued in that case. But in that case, what R.G. and Dallas argued was that, yes, the Ninth Amendment could be effective, but the financial obligations did not yet kick in at the time of the purported breach. And then at the time that R.G. and Dallas was late on payment, they were operating under a side agreement, a month-to-month tenancy, essentially, between R.G. and Dallas and TIAA that filled up that gap period between the expiration of the Eighth Amendment and when the financial obligations of the Ninth Amendment kicked in. So that was their argument. I think it's fair to assume from the jury verdict that that's what the jury agreed with. But again, I was not the lawyer in that case, and it's not my client, so I'm speaking a bit outside the record right now. One thing that seems to be running through this whole case, and we'll be asking your is this notion that, you know, R.G.N., just a shell, no assets, the same person signed on behalf of H. Work on this assignment and changed his hat, signed on behalf of R.G.N. It's really, you know, without making the case that there's an alter ego and there ought Yeah, and no surprise to anybody, and you shouldn't get away with it, is sort of an underlying theme here. And you, in your argument to the bankruptcy court, appeared to, I think, argue that ... Well, I say you. I mean your client. I don't know whether you were involved at that point or not, Mr. Bash. When you're arguing to the district court, that the bankruptcy court had ignored the separate existence of R.G.N. and H. Work. But that's not something that appears to be being argued here. Quite the contrary. Well, let me just ask you, have you abandoned that? Is that just not in the case? How should we be thinking about this? So let me take all of that and explain how we see that strand applying here. So in the lower courts, at the bankruptcy trial, TIAA expressly abandoned any alter ego, veil piercing, or principal agent theory. That's at joint appendix 818, and again, in the closing argument, at joint appendix 1238. So that's out of the case. What we were attributing to the bankruptcy court is that at one point, the bankruptcy court said something that we understood to mean, in effect, you're arguing material change, which doesn't apply in Texas, and even if it did apply, because the parties are related, it would not make you win the case. But there is, right after that, on page 11 of the bankruptcy court slip opinion, it talks about there's no surprise here, same guy signed for both. So were you arguing that to the district court? The only issue, the only question at issue in the district court was whether an assignee could, an assignor could be bound by amendment entered into by the assignee and the lessor on this issue. In the district court, we didn't argue there's no alter ego, principal agent, and so forth, because the other side abandoned that argument and wasn't raising it. And in fact, the district court understood the bankruptcy court to say, that has nothing to do with our holding. The holding is purely this Texas law supposed rule about assignor liability. And that was just a point the bankruptcy court made to say, hey, even if the material change doctrine applied, which it doesn't, this is why I would find it not satisfied. The parties are in agreement that the material change doctrine does not apply. They're in agreement on that. And it seems they're in agreement that there's, that veil piercing and alter ego theories have no place here, if I understand the other side's argument. But I'll be asking them about that. My question to you is, do you, do you, you seem to argue that disinfected decision making, are you saying, no, I don't, we don't think it's a problem in the decision making process at all? In other words, you had argued in the district court, did this, the bankruptcy court had this in its head and it was wrong. It infected its decision making and the district court said, nah, it just mentioned it. I'm just wondering if you think it's still a problem, because as I read it, I wonder if it's still a problem. I wonder, you know, is it a problem or isn't it? Let me take that question like this. I don't want to psychoanalyze the courts below and we don't, the district court didn't mention that consideration at all, so I don't think it played a role in the district court's decision. As we understood the bankruptcy court's analysis, they took our argument, a bankruptcy judge took our argument and thought it was a material change doctrine argument and then said one reason to reject that is because the parties are related. And so it does seem like that consideration might've played a role in the court's analysis,  I think the ultimate holding of both courts below was that under Texas law, an assignor can somehow be bound by a modification of an agreement that it did not assent to. That is clearly wrong. Texas black letter law says that all parties to an agreement must assent to a modification. And they put the shoe on the other foot and say that the consent must be given by the landlord, if you will, and that there has to be a release given. That is incorrect, your honor. And I think if you read it, I understand you're saying it's incorrect, but isn't that, that's their argument? I think they're trying a little bit to have it both ways. They fully appreciate that under the fifth amendment, section 19 of the agreement for parties under common control, the agreement provides that the lessee can make an assignment to a party under common control without the landlord's consent. That's in the packet that we provided the court with the key provisions. They ultimately admit that in their brief, there's, but then, then they, they refer back to the lease that says that you're still liable for all of the obligations that you had as a lessee here under whatever here under means. And we don't disagree with that under the natural reading. So in this case, we made the assignment in 2014, the amendment up to the amendment that we signed, we were obligated to continue to pay rent through 2019, or to be liable for the rent. We don't dispute that. That's what it means that we're liable, that the assignment does not absolve us from liability for the document here under I'm paraphrasing, but, but that's what that means because the document we signed said the lease term expired in 2019. Answer, answer their argument, which is under, under your reading of this, you really, you really are ignoring the principle that an assignee and assign or is liable for even the, and assign or loses any liability at all. They're, they're, it's only what they agreed to. And the slightest change that an assignee might agree to is something you're not on the hook for no matter how foreseeable it is, no matter how easily contemplatable it was, you get to walk away from it. So yeah, contractually, how does that work, given that you're supposed to be according to the language of this lease, which they point to repeatedly on the hook for what the assignee does? Judge Jordan, the principle is that whatever you assented to, which in this case was five years more of rent in another case could be a rent increase process like the Kirby case cited in the briefs that the lease further, excuse me, whatever you were sent to, you continue to be liable for, even if the assignee and the lessor make aside another amendment for something else. So the example we give in the brief is suppose there's an assignment and then the assignee and the lessor separately agree to a parking space, which is a relatively minor addition to the lease. That doesn't absolve the assignee of the obligation to pay base rent for the duration of the lease term. All it does is mean the assignee as a non-assenting party cannot be liable for the parking space. So it's just not true, as the other side says, that any small change would absolve us of liability or work innovation. The assignor remains liable for everything it assented to, but under basic, I'm sorry, your honor. Except the parking space. But deal with the district court's assertion that the cases you've brought forward, none of them are holdings. This is dicta, or as the court put it, loose language in a handful of cases and dicta alone. Let me address that in two different ways and maybe three. The first is this. If you take the legal question up just a slightly higher degree of generality, and the question is whether a party to a contract can be bound by a modification that it did not assent to, Texas law is clear, the other side doesn't dispute it. You cannot be bound by a modification. Can I just pick up on that? Because I think the argument that they're making is, okay, true enough, through seven amendments you go through 2019. But the entity that was in effect controlled by H Work, RGN Dallas, at least that's the argument that they're making. And Judge Jordan notes that it comes through in their briefing continually. You knew about it. You impliedly assented to the eighth amendment, which is the bridge of additional, what, one year? And then you had the big enchilada, the ninth amendment, and you knew about that. It was all looking really good pre-pandemic. And therefore, since you, in effect, controlled RGN Dallas, then there has to have been assent or implied assent. That's to me, as I understand, a bit of their theme. Judge Brock, can I answer? I see my time has expired on opening. Yeah, you can certainly. Although he's so rough. I wish. I'm sorry, Judge Jordan. No, she's smarter, better looking, the whole thing. But we know who you're talking to. Go ahead. She hired me, so she's really smart. I was looking right at the Judge Roth nameplate and had a brain freeze. Your Honor, let me make sure I remember the question. Is there implied assent? No, Your Honor, because they did not pursue that theory in the lower court. There were no factual findings of implied consent or assent, and there was no evidence of implied assent or consent. That's a theory that you would have to approve. I mean, prove. It's certainly true that in some cases there can be... Isn't there some proof in the notion that it's the same guy? It's the same guy. He signs on one line, then he sits in another chair, and he signs on the other line. And that ought to be taken as some kind of implied assent. That seems to be the gist of the equitable estoppel or the assent or whatever you want to call it. I agree, Your Honor, that that's the gist of it, but it is just clearly wrong. Texas, like Delaware and I assume every other jurisdiction, recognizes the principle that the Supreme Court recognized in best foods, which is that corporate officers can wear different hats, and when they do, they don't bind other entities in which they serve as an officer. And I'll just note as a practical matter, the structure here is not some unusual shenanigans in the commercial real estate market. It is common for large commercial real estate companies to establish separate entities where there may be a same authorized person for each entity, but each entity holds the particular property. TIA was well aware of that, and the reason you know they were well aware of that is in the Ninth Amendment, they specifically negotiated for a separate related entity, IWG Global, to serve as the guarantor on the Ninth Amendment. They could have sought H Work to be the guarantor. They didn't do that. They knew exactly how this works, and that's one reason I think they haven't pursued alter ego or any of those theories here, because there's no basis to disregard the corporate separateness of the entities in this case. There's no evidence of that at all. Well, do we have anything else? Judge Roth, anything from Mr. Bash? Nothing further. Okay. Okay. We'll hear from you on rebuttal, Mr. Bash. Thanks very much. Thank you, Your Honor. You may proceed. Good morning. I'm Nicole Saharsky, representing TIAA. I think we need to start here with the language of the lease, and with H Work. Can I just get one item just out of the way? Can you – will you – is it correct that you're not alleging any alter ego or other theory that would allow us to ignore the corporate separateness of these two entities, H Work and RG&D? We have not made an alter ego – or, I'm sorry, a piercing the corporate veil argument. They're all analogous. Same concept. Well, I think there is a – if I can just – there is a way to distinguish between the two, that there's a question – there's no question about piercing the corporate veil, which would be to say that RG&D and H Work are the same, and so, because we can recover through RG&D and H Work is in their shoes. We're saying we're trying to recover against H Work because of their own position. So that's not a piercing the corporate veil. But to answer your question, we do think that common control is relevant, and here's how it's relevant. The lease starts from the proposition in Section 16C that the tenant remains liable even in the event of assignments, and Texas law says the same thing. Wait, wait, wait, hold on. What do you mean, we think it's relevant? How is – how does common control have anything to do with this? I have to ask you, why do you keep talking about this? It's all over your briefing. The implication is – the implication clearly is this is underhanded stuff, or at least it's a little bit like they shouldn't be – they're getting away with something, Judge. They're getting away with something if you let them say, hey, we're different. We're different. We're a different entity. We shouldn't be held to this. Don't let them get away with it. It's the same guy who signs both. That's all over the papers. That's the same thing presented to both the bankruptcy court and the district court. So I don't think you can walk away from it quite that quickly, Ms. Zaharsky, and say we're not making an alter ego theory because it sure sounds like you're making something that – like it waddles and quacks like an alter ego theory. It's a – they're the same people. Make them live with it. So if it's – how is it that this argument you're making about it's just the least is in any way affected by their related parties unless you're making an alter ego theory argument? What I'm trying to say is I understand the question. We think it's relevant and the bankruptcy court and the district court discussed it as relevant and I just want to explain why. We start with the proposition under the lease and under Texas law that the assignor remains liable in the event of an assignment. Is that true whether they're related entities or not? Correct. It is true whether they're related entities or not. Okay. So you're getting to the point about why related entities matter? Yes. And so an argument was made, oh, wouldn't it be unfair if there was some amendment that happened so far down the line and a stranger to the case made an amendment and how could we be held liable so far down the line? And the answer that the bankruptcy court had and the district court picked up on this is, well, there may be equitable doctrines that apply in those circumstances such as the material change doctrine that's not recognized in Texas, but it wouldn't matter here because the other side has not argued for the material change doctrine and they would not qualify for it because of this common control. So it came up, I think, in response to their claim that there was some type of unfairness here. And so that's the relevance of the common control. So it's relevant to say, it's relevant in your view, it justifies what the district court and the bankruptcy court did because they knew. They knew what was going on. And they unimpliedly assented or consented to the eighth and the ninth amendments. Yes, I think you can find from the district courts, the bankruptcy court made actual findings about what was new and what was understood in the same individual assigning. You could easily find implied. Now, it certainly smells like an alter ego argument again. What is it? If it's if it's true that unrelated parties, would you be making the same argument if these were unrelated parties, but they walked down the hallway and said, you know, we're thinking about really expanding the lease? Would you say, well, they knew? Could you make that argument? I think that they're there. The fact that these are related parties makes this an easy case. But that's what I'm pressing on. Why does it make it easy if there's not an alter ego? Why is it relevant at all? Let me say, I think the court can completely decide this case based on the terms of the lease without looking to any facts about common control. And the way that the court would make that decision is to look at Section 16 C of the lease, which says that in the event of an assignment, no assignment shall ever relieve the tenant of any liability here under. I think the court would this year under me. It means under the lease. And the lease is the original lease that started on the first day of the lease and has remained in effect. And their argument is, is the lease as with seven amendments that relate to them. I mean, they took on the first four from someone else, but seven, seven amendments. But they're not responsible for the eighth and the ninth because those are the parties are TIA and RGN Dallas. Right. But I think that that is incorrect. If you look at the actual terms of the lease, their argument amounts to the idea that the amendments create new contracts. And if you look at the relevant terms of the lease, they start on the first page of the original lease by defining lease as a defined term. This was the lease agreement, capital L lease. And then it says in Section three, this lease shall continue in force. And, you know, until it's on the commencement date, until it expires. And then when the Ninth Amendment happened, if you look at Section H of the beginning part of the Ninth Amendment, it says the landlord, the tenant desire to amend the lease. They're amending the capital L lease. It's an amendment. It's not a new contract. And then in Section 21A, which addresses the amendments, they call it amendments. And address Miller. I mean, you don't have to read us the lease. I'm just trying to point out. We've read it. Trust us. We've read it. So having read it, answer their arguments, which are, in effect, it can't mean what the other side is saying, because according to their logic, RGN could have said, you know, as part of this new lease agreement, we with you are going to accept all of the property that you TIAA CREF hold all over the world. We'll lease tens of thousands of pieces of office space from you in Dallas and in Tokyo and in Timbuktu. And by your logic, that's all here under. And they're on the hook for all of it. Right. So they were the ones who sought the assignment here. Just answer my question. I think it depends. By your logic, that's a yes. Right. I think it depends on the circumstances. I think it depends on the circumstances. And go ahead. Your here under argument seems to be blanket. No matter what the assignee does, the signer's on the hook because it's all, quote, here under. I think if we look at the language of this lease, it contemplates that if the tenant wants to seek an assignment, that it has an obligation to go back to the landlord. And if it wants to get off the hook, it can seek a release. It can also. Yes. Right. I mean, just own your position or don't. Your position seems to be everything is here under. And if you didn't get the landlord's permission, anything the assignee does, the signer's on the hook. There's no, there doesn't seem to be any shades of gray in there. Well, in terms of the terms of the lease, the lease continues and the assignments are here under. And if a person wants to make an assignment, they have choices. They're the ones who want to make the assignment and they can go.  Yes. No matter what the assignee did, it's done. If they want to enter a new lease, they can enter a new lease and say, look, we're sick and tired of being tied up with all these here unders. Let's enter a new lease. Then we don't have to worry about it. Absolutely. So, so two responses, I just want to make sure I address those maybe to address the most recent point first. Yes. They're the ones who wanted to make the assignment and the terms of the lease gave them options. They could say, we've got someone new for you to deal with. So enter into a new contract with them. We don't want to be in this contract anymore. They didn't do that. Or they can say, we understand that we're on the hook under section 16C, but we want to release. Give us a release. They didn't try to do that. The point is, they're the ones who first agreed to this contract and then they're the ones who want to benefit from an assignment. They did benefit from the assignment. It's the same business in the space. And so they had the obligation. And this is what we think Texas law says, to at least go to the landlord and to try to make those amendments. What we're saying about Texas law, presume that or assume, I guess, that having reviewed the cases cited by you and Mr. Bash, we conclude that Texas has not clearly spoken on the issue of an assigner's liability on an amendment to an assigned contract that it did not execute. What process should I use to decide this case? Well, the way that we would recommend is what the bankruptcy court and the district court both did, which is to say, Texas law has this general rule that the assignor remains on the hook. That's also what the lease says. Is there anything in Texas that would give H Work a way out under these circumstances? No. None of these cases speak to it. And I see that there is- Wait. Don't say none of these cases speak to it. Go ahead and speak. You somewhat dismissively say they've got a handful of cases, but they do have cases. Tell us why Miller and Nexterra and Potts and these other cases are just like, yeah, so what? That's just loose language. The district court bought your argument, accepted your argument. When we read in Miller, quote, a contract that is modified or amended by mutual consent constitutes a new agreement that takes the place of the original, why shouldn't we, even if we thought that was dicto, why wouldn't we think, well, we ought to pay attention. After all, that's the court of appeals of Texas talk, and we should take it seriously. So there are two sets of cases they rely on. You spoke to one of them, so I would like to address those first, which is Miller and other cases along those lines. Those involve changes, amendments, but they do not involve any kind of assignment. So there was no assignment at all. The Miller case in particular was one about an individual who had work done on their house and the contractor. The question was whether the contractor agreed to do additional stuff in addition to the original lease. And in the language that you quoted, the court said, essentially, yes, the contractor agreed to do the additional stuff, and so that is the agreement now of all the stuff that they're obligated to. I don't think it's right to read that as saying certainly anything about assignments because it didn't address assignments. Isn't that an a-for-sure case, Ms. Saharsky? If the parties themselves agree to a change and it constitutes a new amendment, isn't it even more so the case that if a party who's not a party to the new contract, the new agreement, the modification, should be treated as if that's a new agreement? Well, I think that's my second answer, is that it's not a new contract that takes the old one. It is simply that it said, I think, you know, the language was like new agreement, like those are your new obligations. And I don't think it could be understood in light of the new one. That's what I'm trying to get you to answer. What is it about Miller that says, look, if you agree that you're amending this or modifying it, then you've got a new thing that you're dealing with. What I wanted to say is that that idea that there would be a new contract that takes the place that somehow destroys the old one would be inconsistent with the case law about novation in Texas that we rely on, which says, if you really are having a new contract and getting rid of the old contract, Texas law has this novation case law, and it's a very high standard that has to be met to prove that. And so I don't think that the case can be read in the way ... Are you saying that Miller is dicta? Yes. I just think it doesn't speak to this situation. And it cannot be read as a new contract that is entirely new contract and getting rid of the old contract. And I think ... It moved the space to a different building. It what? Tripled the space. It increased the base rent in a dramatic way. It's just, it's all here under. Well, I would suggest, Your Honor, respectfully, that you look at the terms of the lease. I know you have, but I just wanted to point to particular terms, including Section H and 21A, which say it is an amendment to the lease. The other thing that I might point the court to, just as a common sense matter, is you asked us to provide you a document that included the relevant parts of the lease as they existed through the Ninth Amendment. That was a hodgepodge. You had to start with the original lease and make all the amendments to it, and then give you what existed at that point in time. It's because there wasn't a new lease when the Ninth Amendment came into place. There was never lease one, lease two, lease three, but I think the other side's argument rests on that. Can I come back to Miller, which you're saying is dictated, but doesn't Hathaway versus General Mills from the Texas Supreme Court say that mutual consent is required for parties to be in privity of contract on contract amendments, which, in other words, doesn't H work have to sign? Well, it's not addressing the question of an assignor. It's just talking about the two people who make the amendments. It doesn't address the question of the original assignor, but other Texas case law, like the Segal case from the Texas Supreme Court, does address the liability of an assignor, at least in general terms, and say that the background rule is that the assignor remains on the hook in the event of an assignment. I just want to get back to ... Why don't you get to their main argument, which is your argument makes a mockery of the base principle of contract law, which is mutual assent, that you just can't ... You may be able to get around it. You persuaded two very smart judges that you were right in the bankruptcy in the district court, but we've kind of been talking around it, and you keep going back to it's fundamental Texas laws. They're on the hook. They're on the hook. Their fundamental point is not just Texas law. It's all contract law. There has to be mutual assent. This was not assented to. They didn't have any ... They're not in it, unless you're prepared to go back to an all alter ego theory. They're not in it, so they didn't assent to it. If you're moving to a new building, and you're increasing the base rent, and you're increasing the term, and they don't agree to it, you're just making a mockery of basic contract law. Go at that. Then you could enter Hathaway by virtue of there not being privity of contract. I understand why you've done the implication that there is some type of merging, or blending, or disregarding some type of boundaries here, but that's not the way the law is. You have to have a party sign on to an amendment, at least according to a couple of cases that Hathaway. To try to answer ... I see the red light is on, but I can answer your question. Okay. To try to answer both of those questions, we agree that contracts require mutual assent, and H-Works signed the original lease here, which indicated that no assignment would ever relieve it of liability under the contract, under 16C, and also provided for specific circumstances of the options that it had if it wanted to make an assignment. They're the ones that wanted to make an assignment. They had the option of seeking a release. They had an option of saying, I've got someone new for you. Deal with that person going forward. They also had the option of running out the contract. They didn't do any of that. They say, no, we talked that they got a guarantor. What they're making you do, Judge, they're asking you to make us the guarantor. That's false. That's wrong. They negotiated for a guarantor. They've got a guarantor. It's not us. They're the ones that are asking to ignore what actually happened here. What's your answer to that? We understood, because of the very broad terms in the original lease, Section 16, as well as certainly all of the involvement that the same individual had, that they were on the hook. Our understanding was that H-Work was on the hook. But at the time... So it still means something to you. It's meaningful to you. You really do think the fact that they're related entities has legal implications here. I'd like to try to answer both questions. I think the first question about the guarantee was, because the Ninth Amendment required such significant additional upfront costs from us, we did seek an additional $3.5 million guarantee from the parent company. We understood H-Work to be on the hook. To go back to the question of common control, you asked several questions, Judge Jordan, about situations of perceived unfairness, about the lease being amended for long periods of time, very different terms, et cetera. What we've tried to explain to the court is that there is this starting point in the lease, which is reflected in Texas law, that the assignor remains liable in the event of an assignment unless they get a release. But what we've tried to tell the court is that there are equitable doctrines that have been developed to address situations where there are changes that are so significant by unrelated parties, and they didn't know about it, and they didn't consent to it, and they didn't benefit from that, that there would potentially be a defense there. And so that's why I think that came up is there's some suggestion, could there be any kind of equitable defense there? And the answer is no. I mean, they've disclaimed reliance on it. We agree that Texas law doesn't recognize it. But I understand what Your Honor's asking in terms of questions about some of these hypotheticals that aren't this case, and like, why does common control matter? And what I'm trying to say is that it does, it could matter in those circumstances. It matters, but it doesn't matter. So it sounds like you're saying. In some sense, it would be nice if we could let creep into material change doctrine here that's not in Texas law currently. Is that correct? I think it's possible that, you know, Texas has not recognized it to this point. They have said that when a tenant assigns a lease, they're acting in the nature of a surety. And in surety law, you know, there's something like the material change doctrine. So I think if confronted with the question, it's possible that Texas would answer it. But to go back. It's not a surety. You negotiated for it. It's apparent. But there's one thing that I want to make sure, and I'll ask Mr. Bashes as well. The district court made a point in a footnote of saying, I asked the middle world argument. And there's no case like this that people have found. Is that accurate? This is, there's nothing in Texas law. It looks like this case. There's nothing any place else you've found that looks like this. Is that an accurate statement or am I over reading or misreading what the district court understands? There's nothing exactly like this. The closest cases we think in Texas law are the cases that say in blanket terms, like the Siegel case, that in the event that Siegel says that a party cannot escape its obligations under a contract merely by assigning the contract to a third party, the general rule is that a third party is liable unless expressly or impliedly released. The trouble with Siegel is it was about an assigner's liability on an unamended lease assigned contract. And here you have amendments eight and nine are front and center in terms of whether there is liability. So Siegel doesn't necessarily or doesn't address this directly. Is that correct? Yes, exactly. What I was trying to say is that that provides the relevant starting point and that the case that my second point was that the case that we think is closest is the Kirby case where there was an extension of the lease. And then there was a revaluation that was meant that a higher amount had to be paid. And then the assigner was liable for that higher amount. It's not exact. You're going to a 1934 case. Why? Why should we pay attention to that and not the more recent cases like Nextera and the language of originally assumed those language? They've got a few cases that talk about the assigner remains liable for the obligations originally assumed or similar, similar formulations. The reason I wouldn't go to those is because the issue in the case was the liability of the assignee, not the assigner. No matter what, if the because if the principle being laid down is and I just read it to you, it wasn't it wasn't like they got confused in the court. They said the assigner is liable for the original obligations. They knew what they were talking about in that case. They knew they were talking about the obligations of the assignee, but they chose to say in the course of their analysis, the assigner remains liable for the original obligations. Why is that not a principle of Texas law we should be paying attention to? Because in that context, if you read the rest of the cases, the way that it's contrasting it with what the assignee agreed to take on, there's a set of obligations. And the question was, did the assignee take on all of those obligations or not? It's just not talking about the situation here. And those cases just aren't resolving questions about the assigners liability. That's why we pointed the court to the Kirby case, because that is one that does talk about the assigners liability. He was what dealt with an arbitration. Arbitration style provisions for future rent. Is that correct? Well, it was I mean, it was at least provision that contemplated like these leases do that there might be changes to the lease, including this revaluation. And then in this case, you know, the district court and bankruptcy court, when they went through it said, these are the same kind of the changes that happened in terms of an increase in the rent extension of the term, um, a different space. Kirby speak to an assigners liability for a lease amendment without its consent. Yes, we think that it did. I mean, it talked about a lease amendment that was contemplated in the original lease. We think that these types of amendments also were contemplated in the original lease. That's actually what the courts below said is that these, I think the district court in particular has a long assessment of like, here are the kinds of things that were contemplated in prior amendments. I thought Kirby stood for the proposition that an assigner remains liable on a lease as it is assigned, but doesn't tell us about an assigners liability for a lease amendment without its consent. Which is why I thought then you tie that or bridge that issue that there was in effect implied assent to the eighth and the ninth amendments. I understand. And let me try to be as accurate as possible. And obviously, you know, everyone has looked at this case. We don't think it is exactly on point. We think it is the closest thing that we could find in Texas law because it talks about an assignment and then there being an increased obligation and that the sign or is on the hook for, for that increased obligation. And we think based on Kirby wasn't the, wasn't it the case that, that the sign or in the original lease that the sign or was on, that there was going to be this reevaluation process knew that there was going to be a reevaluation place about halfway into the 10 year period, right? So it wasn't, it wasn't as if it wasn't as if this reevaluation process was outside of the original lease agreement or as, as next era, the obligations as originally assented to. That was part of what was originally assented to. You're right. You're right. That those are the facts of Kirby, but as the district court said here, that the, in this case, the prior things that had happened with this lease also anticipated moves to different space extension of the lease term and that the eighth amendment in particular anticipated this move to the bigger space. And so it's, it's different things that were anticipated, but we think that as the change was anticipated in Kirby, it also was anticipated here. The only other thing is just to circle back to the opening question that we asked of Mr. Bash, uh, nothing has changed since the October 13, uh, letters sent to us. But if there is anything that does change, I would hope that the parties will let us know immediately. Certainly. And just the question becomes, and I can't figure this out to what extent does there any kind of issue preclusion, no matter what the court does. Right. We don't think we, we of course would advise the court of any developments. As Mr. Bash said, there haven't been any, we don't think that it has any effect on this court's decision for two reasons. First, you would at least need a final judgment and there isn't one. But second, even if you had a final judgment, the issue, um, which is percolating in the Dallas County is not one that's live before this court. Now, H work did matter. Should it matter to like, cause what you're they put it more artfully than I'm about to, but they, I think that the pitch in the 28 J letter is essentially this. A jury heard this case and they said that the person who actually did sign the entity that actually did sign wasn't in breach, but the TIA was in breach. So what they're asking you to do is to hold somebody who didn't sign is liable when the jury said the person who did sign isn't liable and there's something upside down in the world. If that's the result that occurs, it's catch 22. Yes. Yeah. You, so how, how can it be irrelevant to us that a jury looked at this and said, RGN isn't in breach. If RGN isn't in breach, how is the assign or who didn't sign liable for RGN non-breach to the tune of millions of dollars, respectfully. Respectfully. That's not what the jury found. The jury found a breach by RGN. It entered an inconsistent verdict that the court is still grappling with. It said that Tia breached the ninth. The ninth amendment was in effect, but also a month to month was in effect. Those are inconsistent, right? Okay. And then it said that Tia breached the ninth amendment by not returning the security deposit, but that RGN breached the month to month. And so to say, oh my gosh, RGN didn't breach. How could HRTL be liable? Well, the jury found that RGN did breach. You just said it had breached what? Uh, month to month, uh, continuation of month to month payments under the eighth amendment. But we have an inconsistent verdict that the court is struggling to resolve. The court actually received that verdict and sat there for several minutes, puzzled before announcing it to the rest of the court. The court there, I think needs to figure out what's relevant. Doesn't it? When you say it's not in front of us and it's just irrelevant. I mean, well, I'd like to explain why. Okay, go ahead. Tell us why, tell us why a jury's rigged and perhaps the court will be able to rationalize it. If the court rationalizes it in a way that, that lets RGN off the hook for a whole bunch of stuff. You want H work to be on the hook for, doesn't that cause a real problem? Well, the question I think would be whether there was a breach of an agreement and RGN or I'm sorry, H work did argue below to the bankruptcy court and the district court and made the same arguments about how there was no breach of the agreement. And both of those courts rejected those arguments and H work did not raise them on appeal. If it doesn't bring the issue to this court on appeal, that issue is not live. Your honors. The issue of breach is not why that wasn't preserved in this court. And that's why we think it doesn't matter. You think it's forfeited and we should ignore it. And we should go ahead. Even if in Texas where Texas courts are applying Texas law and a Texas jury has said, if it turns out that it's determined to have said that RGN isn't liable for the things you say they're liable for, we should be saying H work is at the end of the day, that's where you come out. The issue is not over breach is not one before this court. And I think that the parties have the obligation to bring the issues to the court. I guess just the last, if I could, of course I want to answer your honors questions. Oh, I understand your answer. Okay. Well, I think, you know, two courts have looked at this, the bankruptcy court and the district court, and they recognize the principle, both in the lease and under Texas law that the assign or remains liable, and it's not as though they had to make the assignment. They did that to benefit their business. Had the jury verdict come down when you were in front of the bankruptcy court and the district court? No, no. It came down during the briefing in this case. Yeah. Okay. All right. Well, we got you in the, uh, we'd urge this court to affirm. Thank you. Our ski bash. You got it. Thank you, your honor. Judge Amber to keep the dystopian novel theme going. I think a lot of what the court just heard was the equivalent of two plus two equals five, because it doesn't work. Um, Kirby as the bench, did you, did you just, did you just forfeit your arguments about, uh, what's going on in Texas? No, your honor. So the rule that this court has applied and that we noted in the letter to the court is that a party is not obligated to raise an issue preclusion question until it ripens until there's a judgment that can be preclusive. So for example, if a party chooses not to appeal an issue because it's clear error review, and there's other issues that are de novo that make more sense for appellate review, and then an action happens that could be race judicata or issue preclusive. We're aware of no case that says, because you didn't raise the separate issue of the merits of whether the court in this case committed clear error and abusive discretion, you're borrowed from raising an issue preclusion issue that has just arisen at that moment. So I don't think that is correct. There would be foreclosed from raising an issue that was not available to us until a final judgment in the Texas case. There's three points that I heard from the podium that I'd like to address. One is Mr. Provision 16 C of the agreement. The problem is not just here under that provision applies equally to sub lessees. So it says no sublease shall destroy liability either. I'm paraphrasing, but it says no assignment or sublease under the logic of the other side's position. That would mean that a, a mere sub lessee could enter into an amendment with the lessor that binds the sub lessor because it's the same language. It's the same clause. And if it does what they say it does, which is, it puts you on the hook for any future amendments to the agreement, it would apply equally to a sub lessee. And I think that is just an extraordinary claim that doesn't make sense. The second point I'd like to hit, we talked, there was a long colloquy about whether bail piercing and so forth was waived or preserved below. I'll just read one of the page sites from below that I quoted in my opening argument that I cited in my opening argument. This is their argument to the bankruptcy court in opening. This is not a case about bail piercing or corporate formalities. This is a case about plain vanilla, Texas law. That's a page eight 18 of the joint appendix. They clearly forfeited any argument about these are the same entity or they should be treated. I understand them to be saying they're not making that argument, but that it still has relevance. It's got relevance because we're not asking you to pierce a corporate bail. We're just asking you to acknowledge. Judges what the bankruptcy court and the district court acknowledged, which is this isn't the circumstance where anybody can claim unfair surprise of the sort that, uh, H work was positing, uh, would warrant or justify, uh, thinking there's something unfair about them being on the hook. Now I I've, I haven't done justice to the way Ms. Zaharsky put it. She did it much better than I did, but, but I understand them to be saying that's a way that the lower court, excuse me, district court and bankruptcy court were thinking about it and the way we should be thinking about it too. What's wrong with that? As I understand Ms. Zaharsky's argument up here, it was that to the extent we're arguing that this resulted in unfairness. The relation of the parties is a response to that. We're not arguing that we're arguing that a party cannot be bound by an amendment. It didn't sign full stop. And to answer judge Ambrose questions to Ms. Zaharsky about process, what do we do if we think none of these cases are exactly on point? I think the first thing you do is go to one level up of generality. The question, and you agree with Ms. Zaharsky, there isn't any case like this in Texas law. And frankly, you haven't found one from outside Texas either. Am I right? Uh, no, we do cite one case that we think is the closest on point. Um, it's the Dave Summers case cited in the briefs. So in that case, the one difference, it was, it was the lessor, not the lessee making the assignment, but it made an assignment to a bank and the lessee send money to the bank. Don't send money to the old lessor. And the question was whether that was valid because there was a writing clause in the contract. You had to make amendments in writing. And the only thing the court of appeals asked in that case was whether the original lessor had authorized that in writing, they didn't ask whether the bank had authorized it in writing. They made clear that the assignment to result in a modification of the contract, you still needed the original lessor's consent. So it's not a commercial real estate case, but of all the cases cited by the parties, I think that's the closest one on the closest, but what I'm hearing is you saying, yeah, there's when I have one like this, exactly. They're just not, this is, this is the first time this has come up like this. I think that's fair. But again, I think the tie goes to mutuality of assent, which is the cornerstone of contract law. And it can't be the case that a party could be bound without its consent. Um, I would hope to make two more points, but I know my time is going over. Probably I have with the summer's case, which, which may be analogous in some ways, it was just a one page opinion, right? Fair enough. Your honor, but one, one page opinions are, are, are opinions just as much as 10 page opinion. Oliver Wendell Holmes didn't do one page opinions. He at least did five. Well, some people can be, um, very, very brief. I would just make two more points if I could from the bench. Sure. Um, one on a material change doctrine, the idea that even if it applied, you would do some equitable analysis of whether they're related parties. As far as I can tell, that's a gloss by TIA that there's only three cases applying this doctrine, which is just a thing that three courts have applied over the course of a hundred years. Uh, I'm not aware that there's really an element of that doctrine. I'm kind of putting that in quotes where you look to a semi bail piercing type theory. Um, and the last point I would make is just that if this court thinks consent could be in play, we don't think it is. They didn't argue that they forfeited it. There's no evidence of it. It shouldn't be in play. We should get a reversal. But if the court did think that's in play at most, that could result, I think, in a baker and remand for fact finding on consent. And if that happened, we would have an opportunity in the lower courts to raise issue preclusion once the final judgment is entered in the Texas jury. All right. Thanks. We appreciate the council's argument this morning. We'll ask the parties to come together and share the costs of preparing a transcript for us. If you would, and we'll take the matter under advisement. We're in recess.